ELECTRONIC CITATION:  2001 FED App. 0007P (6th Cir.)
File Name:  01b0007p.06

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

In re:  STEVE D. ROBINSON,   )
   )
Debtor.   )
_____)
   )
STEVE D. ROBINSON,   )
   )
Appellant,   )
   )
v.   )   No.  00-8088
   )
CHAMPAIGN LANDMARK, INC.,   )
   )
Appellee.   )
_____)

Appeal from the United States Bankruptcy Court
for the Southern District of Ohio, Eastern Division, at Columbus.
No.  99-57410.

Argued: June 13, 2001

Decided and Filed:  August 21, 2001

Before: BROWN, MORGENSTERN-CLARREN, and RHODES,
Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

**ARGUED:**  Grady L. Pettigrew, Jr., COX, STEIN & PETTIGREW, Columbus, Ohio, for Appellant.  Ray A. Cox, COX & GINGER, Dayton, Ohio, for Appellee.  **ON BRIEF:**  Grady L. Pettigrew, Jr., COX, STEIN & PETTIGREW, Columbus, Ohio, for Appellant.  Ray A. Cox, COX & GINGER, Dayton, Ohio, for Appellee.

---

## OPINION

---

WILLIAM HOUSTON BROWN, Bankruptcy Appellate Panel Judge. The Debtor appeals the bankruptcy court's order overruling his objection to the claim of Champaign Landmark, Inc. For the following reasons, we **AFFIRM** the decision of the bankruptcy court.

## I. ISSUES ON APPEAL

The issues on appeal are whether the bankruptcy court abused its discretion or erred when it decided that there were no grounds warranting revocation of the arbitration award and whether the bankruptcy court erred when it ruled that res judicata barred the Debtor's objection to Landmark's claim. As a part of these issues, there is a question of whether the bankruptcy court erred by denying the Debtor an opportunity to present evidence in support of his legal arguments.

## II. JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction over final orders of the bankruptcy courts of the Southern District of Ohio pursuant to 28 U.S.C. §§ 158(a) and (c). The bankruptcy court's order disposing of Landmark's claim is a final appealable order, because it "'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Official Unsecured Creditors Comm. of Valley-Vulcan Mold Co. v. Ampco-Pittsburgh Corp. (In re Valley-Vulcan Mold Co.)*, 237 B.R. 322, 326 (B.A.P. 6th Cir. 1999) (quotation omitted), *aff'd*, 248 F.3d 1154 (6th Cir. 2001) (unpublished).

We review a decision to confirm or vacate an arbitration award "for clear error on findings of fact and de novo on questions of law." *Dawahare v. Spencer*, 210 F.3d 666, 669 (6th Cir.), *cert. denied*, 121 S.Ct. 187 (2000). "'It is well established that courts should play only a limited role in reviewing the decisions of arbitrators.' The Federal Arbitration Act presumes that arbitration awards will be confirmed." *Id.* (quotation omitted). "'De novo

2

review requires the Panel to review questions of law independent of the bankruptcy court's determination.'" *First Merit N.A./Citizens Nat'l Bank v. Getz (In re Getz)*, 242 B.R. 916, 918 (B.A.P. 6th Cir. 2000) (quotation omitted).

## III. FACTS

Appellant Steve Robinson (the "Debtor") is a farmer. For many years he had a business relationship with Champaign Landmark, Inc. ("Landmark"), an agricultural cooperative that buys grain for resale from its members. The Debtor and Landmark entered into contracts under which the Debtor sold grain to Landmark. The contracts are of a type commonly referred to as "hedge to arrive" contracts.[1] Under these contracts, the Debtor was obligated to deliver a certain amount of grain to Landmark on a date that was established at the time the contracts were executed, but which could be deferred, or "rolled," for a period of not more than two crop years. The contracts contained an arbitration clause which provided, "all disputes and controversies of any nature whatsoever between them with respect to this contract shall be arbitrated according to the Arbitration rules of the National Grain & Feed Association (the "NGFA"), and that the decision and award determined thereunder shall be final and binding."

Alleging that the Debtor had defaulted on his obligation to deliver grain under three of the contracts, Landmark canceled the contracts and made a claim for damages. The Debtor disputed his liability. Landmark commenced litigation in the Common Pleas Court of Champaign County, Ohio, to enforce the contracts' arbitration provisions. Landmark prevailed on a motion for summary judgment for enforcement of the arbitration clauses, and that court referred the parties to arbitration.

Landmark then filed its complaint commencing an arbitration before the NGFA, alleging that the Debtor failed to deliver grain in accordance with the contracts and that the Debtor was liable to reimburse it for damages resulting from his breach. The Debtor answered and argued that Landmark had unfairly and without consent altered the terms

---

[1] For a description of hedge to arrive or cash forward contracts, see *Nagel v. ADM Investor Servs., Inc.*, 65 F. Supp.2d 740, 748 (N.D. III.), *amended by* No. 96 C 2675 1999 WL 966437 (N.D. III. 1999), *aff'd*, 217 F.3d 436 (7th Cir. 2000); and *Anderson, Inc. v. Horton Farms, Inc.*, 166 f.3d 308, 317 (6th Cir. 1998).

of the contracts and that the agreements violated 7 U.S.C. § 6 (a provision of the Commodity Exchange Act) and were not enforceable. Neither party requested a hearing, and the matter was submitted to arbitration on the pleadings.

A panel of three arbitrators appointed by NGFA issued a report on or about June 19, 1999, finding that the contracts were valid and exempt from the Commodity Exchange Act and that the Debtor had breached the contracts.[2] The panel awarded Landmark $219,272.08 plus interest. The Debtor did not file a motion to vacate the award. *See* 9 U.S.C. § 10. Landmark did not file a judicial action to confirm the award. *See id.* § 9.

The Debtor filed his Chapter 12 case on August 17, 1999. Landmark filed a claim in that case based on the arbitration award on September 29, 1999, and the Debtor filed an objection to the claim on February 11, 2000. The Debtor's objection is not included in the record on appeal; however, in a memorandum filed in support of the objection, the Debtor argued that the arbitration award should not be recognized as an enforceable obligation. He asserted that the claim should be disallowed because Landmark did not have an enforceable contract with the Debtor, had breached its fiduciary duty to the Debtor, had violated the Commodity Exchange Act, and had violated state and federal law.

The Debtor argued to the bankruptcy court that the arbitration decision was subject to review under section 10 of the Federal Arbitration Act, 9 U.S.C. § 10, and that his objection was not barred by res judicata, because (1) the arbitration process was flawed; (2) the arbitration award was not confirmed by any court; and (3) the Debtor was honest and in need of bankruptcy relief. He also argued that the award should be vacated under federal law because it was made in manifest disregard of the law.

Landmark responded to the Debtor's objection and argued that the arbitration award was binding and was entitled to preclusive effect.

The bankruptcy court entered an agreed order bifurcating the hearing on the claim objection. That order provided that the court would first consider Landmark's argument that the Debtor's objection was barred by res judicata and collateral estoppel. The order provided that the preclusion issue was to be submitted on the pleadings and that:

---

[2]Neither party objected to any of the arbitrators appointed by NGFA in spite of their right to do so. One arbitrator voluntarily withdrew and was replaced.

Oral argument ... shall be heard on September 11, 2000 at 2:00 p.m., after which the issue will be submitted on the record. If the Court finds that Debtor's Objection is barred by res judicata or collateral estoppel, the Objection of Debtor may be overruled without an evidentiary hearing and the Claim may be allowed. If the Court finds that the Debtor's Objection is not barred by the doctrine of res judicata or collateral estoppel, then an evidentiary hearing on Debtor's Objection shall be heard on ... October 30, 2000 and ... October 31, 2000[.]

The bankruptcy court heard oral arguments on September 11, 2000. The Debtor's counsel argued that the objection was not barred by res judicata, because the arbitration process was flawed, as the arbitrators "all came out of the industry," and because the arbitrators should have ruled that the parties' contracts were futures commodities transactions rather than cash forward grain sales. He also argued that the award was not binding because it had not been confirmed. Landmark's counsel argued to the contrary. The bankruptcy court took the matter under advisement and then on October 26, 2000, without a separate evidentiary hearing, the court entered an opinion and order overruling the Debtor's objection to Landmark's claim. The bankruptcy court held that the Debtor had failed to allege or to prove any specific facts warranting a revocation of the arbitration award and then found that res judicata precluded the court from addressing the merits of the Debtor's objection to the claim. The Debtor filed a motion for reconsideration on November 6, 2000, and the bankruptcy court denied that motion in an order entered on November 13, 2000. This appeal followed.

## IV. DISCUSSION

Although the Debtor argues on appeal that the bankruptcy court failed to provide an opportunity for him to present proof to support his objection to Landmark's claim, the critical issue in this appeal is whether there were any grounds upon which the bankruptcy court should have refused to recognize the prebankruptcy arbitration award as the basis for a claim against the Debtor. The Panel concludes that there are no such grounds, and we AFFIRM the bankruptcy court's order overruling the Debtor's objection to Landmark's claim, but we do so without reaching that court's res judicata ruling.

5

The Debtor's principal argument is that the bankruptcy court failed to conduct an evidentiary hearing to accept proof on the Debtor's contention that the arbitration award was subject to attack in that court. We examine each of the Debtor's arguments.

We note first that the bankruptcy court was without subject matter jurisdiction to review the decision of the state court that the Debtor and Landmark "signed contractual documents" and "that reasonable minds cannot differ on the question of whether the arbitration clause was included in the contracts." On December 18, 1997, prior to the Debtor's filing for Chapter 12 relief, the state court referred the parties' contractual disputes to arbitration. That decision is beyond collateral attack in the bankruptcy court under the *Rooker-Feldman* doctrine, which generally precludes a federal trial court from exercising appellate review of a state court judgment. *See Singleton v. Fifth Third Bank of Western Ohio (In re Singleton),* 230 B.R. 533, 536 (B.A.P. 6th Cir. 1999). Any portion of the Debtor's attack on the arbitration award that flows from the Debtor's contention that the initial arbitration process is flawed is therefore unfounded.

More particularly, if the Debtor is aggrieved because he was forced into arbitration rather than a judicial proceeding, that argument also is beyond the bankruptcy court's and this Panel's jurisdiction. The record before this Panel contains, in fact, a specific contract for arbitration, entered into by the Debtor and Landmark on February 20, 1998, submitting the controversy over the contracts at issue in this appeal to arbitration under the NGFA rules. The Debtor's argument to the bankruptcy court that the arbitration clause was hidden in the contract and that he was not fully informed must be rejected.

Regarding the Debtor's contention that the arbitration process was flawed because of an inherent bias, the Debtor does no more than make a generalized argument that all of the arbitrators were "tainted" because they "all came out of the [grain dealer] industry." The court in *Nagel v. ADM Investor Servs., Inc.,* 65 F. Supp.2d 740 (N.D. Ill.), *amended by* No. 96 C 2675, 1999 WL 966437 (N.D. Ill. 1999), *aff'd*, 217 F.3d 436 (7th Cir. 2000), pointed out the essential flaw in this argument. Just as in *Nagel*, this Debtor has not argued that "any of the arbitrators is biased in the sense that he has a stake in the outcome." *Nagel*, 65 F. Supp.2d at 745. The bankruptcy court gave Debtor's counsel a full opportunity to present his theories of why the arbitration was subject to judicial review.

6

The argument in reference to bias was limited to the concept that none of the arbitrators could be fair due to their employment as grain dealer/members of the NGFA. "That some (or all) of the arbitrators may be grain merchants does not equate to partiality; more likely it equates to expertise, and obtaining the benefits of the law merchant is a big reason why sophisticated commercial parties choose arbitration over litigation." *Id.* at 746.

Under the language of the controlling statute, in order to establish bias, there must be a showing of "evident partiality." 9 U.S.C. § 10(a)(2). The Sixth Circuit has declined to hold that arbitration under the NGFA rules is systematically biased, and its decision confirms that the objecting party must show that a "reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration." *Andersons, Inc. v. Horton Farms, Inc.,* 166 F.3d 308, 325 (6th Cir. 1998) (quoting *Apperson v. Fleet Carrier Corp.,* 879 F.2d 1344, 1358 (6th Cir. 1989) (additional quotation omitted)).

The Debtor now says that he was not given the opportunity to present proof on bias, but in the absence of any argument other than the general one described above, there is nothing to indicate that he had any substantive proof to offer. We find no error in the trial court's ruling when there was no proffer of proof to the bankruptcy court.

The Debtor next argues that the arbitrators exceeded their authority. The Sixth Circuit has stated that such an argument must be grounded in the relevant statute, the Federal Arbitration Act, 9 U.S.C. §§ 10-12 (the "FAA"). *Andersons,* 166 F.3d at 328 ("Courts play only a limited role in reviewing arbitration decisions, and 'are not permitted to consider the merits of an arbitration award even if the parties allege that the award rests on errors of fact or misinterpretations of the contract.' A federal court may set aside an arbitration award under the FAA only upon a finding that certain statutory or judicial grounds are present.") (citations omitted). The Debtor simply argues that the arbitrators misinterpreted the contracts at issue when they found them to be hedge to arrive contracts. This argument that the arbitrators made a mistake, either of fact or law, fails under the authority in this Circuit that one cannot demonstrate an excess of authority merely because one disagrees with the arbitrators' decision. *Federated Dep't Stores, Inc. v. J.V.B. Indus., Inc.,* 894 F.2d 862, 866 (6th Cir. 1990) ("This circuit has determined that "'[m]anifest disregard of the law'" means more than a mere error in interpretation or application of the

7

law.") (quoting *Anaconda Co. v. District Lodge No. 27 of the Int'l Ass'n of Machinists and Aerospace Workers,* 693 F.2d 35, 37-38 (6th Cir. 1982)).

The Sixth Circuit recognizes that an arbitration award can be vacated "where the arbitrators have manifestly disregarded the law." *Dawahare*, 210 F.3d at 669 (citation omitted). The Debtor, however, has failed to identify what law the arbitrators disregarded. In his argument that the bankruptcy court denied him an opportunity to present proof that the arbitrators manifestly disregarded the law, the Debtor only mentions that he would have offered the contracts between these parties, the affidavit of the Debtor and the affidavit of an expert witness. At the conclusion of the September 11, 2000 hearing, Champaign's attorney tendered the record of the arbitration panel, and the Debtor's attorney consented to its admission. The bankruptcy court, therefore, had the contracts before it by consent of the parties. Moreover, the Debtor's attorney quoted relevant portions from the contracts in his presentation to the bankruptcy court. The bankruptcy court's opinion indicates that the court fully reviewed everything before it, including the contracts. We find no merit to the Debtor's argument that the bankruptcy court failed to consider the contracts.

Essentially, the Debtor now argues that the arbitrators were wrong in their interpretation of the parties' contracts, but again we find nothing in the Debtor's argument to indicate that any proof could have been offered in support of that point. The Debtor's contention to the bankruptcy court was that the arbitrators, who were from the grain industry, should have recognized that these contracts were, on their face, futures contracts governed by the Commodity Exchange Act. The contracts do speak for themselves, and the proffered affidavit of the Debtor merely says that the contracts attached to the affidavit were the parties' contracts.

As to the expert's affidavit, it merely expresses an opinion that the contracts were "futures contracts," an opinion which the bankruptcy court would have been compelled to reject in view of the *Andersons* authority. In that opinion, the Sixth Circuit clearly held

> that in determining whether a particular commodities contract falls within the cash forward exception [to the Commodity Exchange Act ("CEA") and Commodity Futures Trading Commission ("CFTC") regulations], courts must focus on whether there is a legitimate expectation that physical delivery of the actual commodity by the seller to the original contracting buyer will occur in the future.

*Andersons,* 166 F.3d at 318. Here, the Debtor would clearly fail in his attack, as there is no dispute in the record or arguments about the Debtor's knowledge that actual delivery was required under these contracts. The finding of the arbitrators in this regard is not a manifest disregard of the law; rather, it is a factual finding that the Debtor admitted.

The Debtor argues, apparently as a matter of law, that the contracts are futures contracts, but only because of their rolling feature. He does not argue the relevance of any of the other factors described in *Andersons,* 166 F.3d at 320, for hedge to arrive consideration. The Debtor could roll these contracts forward for delivery, but that feature merely makes these contracts "flexible," not flawed. *Id.* at 319. That is, the seller's option to roll forward the original delivery date to a future, but definite, date does not convert an otherwise valid hedge to arrive contract into a futures contract. The Debtor's contention that the arbitrators were in error disregards the controlling law in this Circuit. "Although they may allow more flexibility than in a traditional cash forward contract, we nonetheless hold that HTA contracts which contemplate actual physical delivery of a commodity are cash forward contracts and are therefore excluded from coverage by the CEA and CFTC regulations." *Id.* In view of the Debtor's admission that ultimate delivery was expected, we find no error in the bankruptcy court's ruling upholding the arbitration award.[3]

Nor is there error in the alleged denial of an evidentiary hearing, since the Debtor's admission would have been proof in support of the bankruptcy court's respect for the arbitration process and award.[4] We note that the bankruptcy court's opinion says that the Debtor failed to present "authority" (rather than proof) to show that the arbitrators

---

[3] For a discussion of the effect of the "rolling" or flexible delivery feature of hedge to arrive contracts, see *Nagel,* 65 F. Supp.2d at 748 and *Andersons,* 166 F.3d at 318. Cash forward contracts, which include flexible hedge to arrive contracts, are not controlled by the Commodity Exchange Act and the Commodity Futures Trading Commission regulations, which instead govern "futures contracts," defined by the Act as "'contracts of sale of a commodity for *future delivery.'" Andersons,* 166 F.3d at 318 (quoting 7 U.S.C.A. §2) (emphasis added). The Act explicitly excludes from the definition of "future delivery" "'any sale of any cash commodity for *deferred* shipment or *delivery.'" Nagel,* 65 F. Supp.2d at 743 (quoting 7 U.S.C. § 1a(11)) (emphasis added); *accord Andersons,* 166 F.3d at 318 n. 14.

[4] It is undisputed that the contracts at issue provided for deferred delivery. Debtor admitted that the contracts did not allow indefinite rolling but rather required delivery within two years. He further testified in the arbitration process that he did not contract to sell more grain than he expected to be able to deliver but that the weather prevented him from producing enough crops to deliver under these contracts. The parties had done business together for years, and the Debtor previously had exercised his rights to roll the contracts and had always delivered. *See Andersons,* 166 F.3d at 320 (including these factors in considering whether hedge to arrive contracts fit within the "cash forward exception" of the Commodity Exchange Act).

manifestly disregarded the applicable law: The bankruptcy court recognized, as we do, that the controlling authority in this Circuit rejects the Debtor's argument.

The Debtor also argues that he is entitled to judicial review of the arbitration award since that award has not been confirmed by any court. An initial flaw in this argument is that the Debtor is late if his objection to Landmark's proof of claim is construed as his effort to vacate the arbitration award. Under 9 U.S.C. § 12, a notice of a motion to vacate must be served on the adverse party within three months of the award's filing or delivery. The arbitration award appears to have been entered on July 19, 1999. The Debtor's objection was filed on February 11, 2000. A failure to timely serve notice results in a forfeiture of the right to judicial review of the award. *See Corey v. New York Stock Exch.,* 691 F.2d 1205, 1212 (6th Cir. 1982) (citations omitted).

Without shutting the door on the Debtor on the timeliness issue, however, we conclude that the absence of prebankruptcy judicial confirmation of the arbitration award is not significant. Judicial confirmation seems to be important for collection purposes under the FAA, but it is not required for purposes of recognizing the validity of the award. *See Kentucky River Mills v. Jackson*, 206 F.2d 111, 120 (6th Cir. 1953) ("The language of [9 U.S.C. § 9] as to application to the court for an order [of confirmation] is not mandatory, but permissive. A party may, therefore, apply to the court for an order confirming the award, but is not limited to such remedy. Prior to the enactment of the United States Arbitration Act, an action at law on the award was the proper method of enforcing it.") (citing *United Fuel Gas Co. v. Columbian Fuel Corp.*, 165 F.2d 746 (4th Cir. 1948); *Lehigh Structural Steel Co. v. Rust Eng'g Co.*, 59 F.2d 1038 (D.C. Cir. 1932)); *cf. Consolidated Rail Corp. v. Del. and Hudson Ry. Co. (In re Consolidated Rail Corp.)*, 867 F. Supp. 25, 32 (D. D.C. 1994) (holding that the language is neither permissive nor mandatory) ("This court holds that the plain reading of § 9 indicates that if a party does not bring an action to confirm its arbitration award within one year after the award is made, the party will be time-barred from availing itself of the summary confirmation process provided by § 9. . . .Since § 9 was meant to supplement and not preclude other remedies, confirmation under § 9 is not mandatory and as such a party is not prevented from using either state law or common law

10

procedures to confirm the award.  To rule otherwise would constitute a legal incongruity which this court determines was not intended by Congress.").

## V.  CONCLUSION

Whatever the purpose of confirmation of an arbitration award, it is the Debtor who had the burden of demonstrating some basis for the bankruptcy court to refuse recognition of the award.  It is not necessary for this Panel to express recognition of the award in terms of the preclusive effect of that award: It is enough that the Debtor has offered no theory that would support the bankruptcy court doing anything but giving that award the validity the FAA requires.  The bankruptcy court correctly considered whether there was any plausible way in which the Debtor could attack the arbitration award, and finding none, that court was not in error in denying the Debtor a futile evidentiary hearing.  Our conclusion that the arbitration award is valid renders the Debtor's argument under res judicata moot.

The decision of the bankruptcy court is **AFFIRMED**.