**DALOW INDUSTRIES, INC., Plaintiff,**

v.

**JORDACHE ENTERPRISES, INC., et al., Defendants.**

No. 83 Civ. 3780 (WK).

United States District Court, S.D. New York.

Oct. 30, 1985.

See also 631 F.Supp. 779.

Burton L. Lilling, Lilling & Greenspan, White Plains, N.Y., for plaintiff.

Robert A. Spiegelman, New York City, for defendant Jordache Jewelry.

Charles L. Kramer, McLaughlin, Stern, Ballen & Ballen, New York City, for defendant Rolo Mfg. Co.

Frank Russell, Deer Park, N.Y., for defendant Glenn-Mitchell Associates, Inc.

## MEMORANDUM & ORDER

WHITMAN KNAPP, District Judge.

Defendant Jordache moves to dismiss the second amended complaint on the ground, among others, that plaintiff is precluded from asserting its claims by a previous arbitration proceeding.[1] For reasons which follow, we grant the motion.

## BACKGROUND

Plaintiff Dalow, a manufacturer of jewelry, has filed three complaints in this action stemming from disputes between it and Jordache under a license agreement. After it filed its first amended complaint, Jordache moved to compel arbitration based upon provisions contained in the agree-

---

1. Defendants Rolo and Glenn Mitchell, although expressing an interest in the outcome of this motion, have not formally joined it. We therefore limit our discussion of the issues to the proceedings as they apply to Jordache.

ment. We granted the motion and stayed this action. After the arbitration was held and an award in favor of Jordache rendered and confirmed by this Court, Dalow submitted a second amended complaint, which Jordache now seeks to dismiss.

Underlying all the complaints is essentially one set of facts. Jordache is the registered trademark holder of the trade name "Jordache" as well as of a fashion design of a horse (the "Jordache marks" or "marks"). Jordache has granted licenses to about 35 different companies to use these marks on a variety of goods which it does not itself manufacture. These include jewelry. In 1981, Dalow become a Jordache licensee and obtained the exclusive right to use the Jordache marks on "jewelry of precious and semi-precious metals," including "karat gold, gold filled, gold plate, and sterling silver." Pursuant to this contract, it manufactured expensive, 14 karat gold jewelry, and undertook to promote it with a costly advertising campaign.

About a year after this contract was signed, Jordache entered into a license agreement with defendant Rolo whereby Rolo acquired the right to use the Jordache marks on

> fashion jewelry of metal, plastic, stone and any other material, exclusive of 'karat gold,' 'gold filled,' 'gold plate' and 'sterling silver'.

Under this agreement, defendant Rolo and its national sales agent, defendant Glenn Mitchell, manufactured jewelry which was gold in color and which was described as "fashion gold" or "basic gold," but which was sold for substantially less than the genuine gold items created by Dalow. Rolo and Glenn Mitchell did not undertake to advertise their products, but nevertheless achieved huge sales success. Dalow's sales, on the other hand, were ruinous.

Dalow contends that Rolo's license with Jordache impermissibly overlapped with its exclusive contract. It also claims that

Rolo's great success was achieved only by virtue of "piggy-backing" onto the substantial promotional campaign Dalow had undertaken to market its genuine gold jewelry. In its first amended complaint (the subject of Jordache's motion to compel arbitration), it charged Jordache with unfair trade practices, false description of goods, antitrust violations, breach of contract, fraud, and abandonment of trademark by Jordache's indiscriminate practice of granting licenses. Its second amended complaint (submitted after the arbitration), contains a cause of action for false description of goods, false representation, unfair competition, and abandonment of trademark.[2]

At the arbitration, Jordache charged Dalow with failing to pay royalties due under its license agreement and with failing to honor other provisions of the contract, including advising Jordache of the amount of inventory it held upon termination of the agreement, expending a specified amount on advertising the Jordache marks, and submitting to an audit of its records. Jordache sought approximately $700,000 in past royalties.

In response, Dalow, which was represented at the arbitration by the extremely able counsel who continue to represent it before us, filed extensive affirmative defenses and counterclaims. These included the following:

5. It is [Dalow's] position that the [license agreement] is invalid and void and that, in any event, it was terminated ... when [Jordache] entered into a conflicting Agreement with Rolo ...

7. The agreement.... is invalid and void because of [Jordache's] material misrepresentations as to the exclusivity of [Dalow's] license to use the Jordache trademarks on and in connection with "articles" as defined in the agreement.

8. [Jordache] has breached the Agreement ... by entering into an agreement with Rolo Manufacturing Co., Inc. ... which agreement granted to Rolo the

---

**2.** Both complaints in addition charge Rolo and Glenn Mitchell with having tortiously interfered with Dalow's contract with Jordache.

exclusive right to use the Jordache Trademarks on and in connection with "articles" as therein defined, which include articles subject of the agreement ... by and between [Jordache] and [Dalow].

9. [Jordache] and its attorneys have misrepresented to [Dalow] the scope of the 'articles' as defined in the Agreement ... between [Jordache] and Rolo....

10. [Jordache] approved and consented to the sale by Rolo and Glenn Mitchell Associates, Inc. ... of articles bearing the Jordache trademarks in violation of [Jordache's] Agreement with [Dalow] and [Jordache] consented to the misrepresentation by Rolo and Glenn Mitchell that such articles were "basic gold" or "fashion gold."

Dalow sought in part the following relief:

A. A finding that the Agreement ... by and between [Jordache] and [Dalow] is invalid and void.

B. A finding that [Jordache] breached the Agreement....

C. A finding that [Jordache] fraudulently misrepresented to [Dalow] the scope of the Agreement ... with Rolo.

D. A finding that [Jordache] approved and consented to the sale by Rolo and Glenn-Mitchell Associates Inc. of articles bearing the Jordache trademarks in violation of [Jordache's] agreement with [Dalow].

E. A finding that [Jordache] together with Rolo and Glenn-Mitchell, misrepresented the nature and quality of the articles sold by Rolo and Glenn-Mitchell under the Jordache trademarks.

L. A determination of all controversies arising under or as a result of the Agreement [between Dalow and Jordache].

Dalow's hearing memorandum before the arbitrators stressed certain contentions which it expected would be borne out by the evidence. These were that Jordache granted to Rolo a license to manufacture and sell the same jewelry as contained in Dalow's exclusive contract; that, despite assurances by Jordache, Rolo had destroyed the market for Dalow's products by marketing basic gold jewelry; that Jordache wrongfully allowed Rolo to take advantage of Dalow's extensive advertising campaigns; and that Jordache had made false representations to Dalow as to the composition of Rolo's product. Dalow sought approximately $11.5 million in monetary damages. It asserted (at page 1 of its Hearing Memorandum):

> Although Jordache Enterprises ... is nominally the claimant, it is really Dalow that is the complaining party here. This arbitration was commenced by Jordache only after Dalow had instituted a multi-million dollar action in federal court against Jordache and others for breach of an Agreement dated November 6, 1981,... and for defrauding Dalow out of the exclusive license granted to it in that agreement to manufacture gold jewelry under the Jordache trademark. *Dalow's claims against Jordache for the damage sustained as a result of Jordache's wrongdoing are asserted as counterclaims in this arbitration.* Those counterclaims far exceed Jordache's claim and form the real subject of this arbitration. (Emphasis supplied.)

The arbitrators conducted eleven hearing sessions, which fill a transcript of over 1,700 pages. Witnesses testified under oath for both sides, and the arbitrators had the benefit of pre-and post-hearing briefs. In February of 1985, the arbitrators issued an award which, without specifying the grounds on which it was reached, terminated the license agreement as of the date of the award and ordered Dalow to pay to Jordache $145,000 as well as the costs and fees of the arbitration. Paragraph 3 of the award stated:

> All other claims and counterclaims are denied in their entirety.

Similarly, Paragraph 6 of the award stated:

> This Award is in full settlement of all claims and counterclaims submitted to this Arbitration.

Upon Jordache's motion, we confirmed the Award on April 15, 1985.

## DISCUSSION

■ Jordache must prevail in its motion to dismiss Dalow's complaint if the arbitration, which was between the same parties as are involved in this action, resulted in a judgment on the merits on the same causes of action as are here asserted. *Parklane Hosiery Co. v. Shore* (1979) 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649, 58 L.Ed.2d 552. This includes matters which were actually submitted to the arbitrators as well as matters which could have been. *Cromwell v. County of Sac* (1877) 4 Otto 351, 352, 94 U.S. 351, 352, 24 L.Ed. 195; *Zoriano Sanchez v. Carribean Carriers, Inc.* (2d Cir.) 552 F.2d 70, 72, *cert. denied* (1977) 434 U.S. 853, 98 S.Ct. 168, 54 L.Ed.2d 123. We of course treat the arbitration award as if it were a judicial decision for purposes of applying the preclusion doctrines. *American Renaissance Lines, Inc. v. Saxis Steamship Co.* (2d Cir.1974) 502 F.2d 674, 678.

■ In determining which, if any, of Dalow's claims were disposed of by the arbitrators, we are guided by Judge Sofaer's well-reasoned opinion in *Pallante v. Paine Webber, Jackson & Curtis, Inc.* (S.D.N.Y. May 14, 1985) 1985 Fed.Sec.L.Rep. ¶ 92,219 at 91,613, 91,615 [Available WESTLAW, DCTU database], that an arbitration decision which explicitly states that "all claims are hereby denied" gives rise to "a heavy presumption that the arbitrators in fact did address all the claims presented in [plaintiff's] statement of claims." *See also Albin Stevedore Co. v. Central Rigging and Contracting Corp.* (9th Cir.1962) 308 F.2d 347 (where subject matter of complaint was presented to arbitrators, their award in "full settlement of all claims submitted" disposed of the complaint). We thus construe the arbitration award to have been a ruling on all claims which were submitted to the arbitrators.[3] The question before us, therefore, is whether the causes of action asserted in plaintiff's second amended complaint arise out of its arbitration claims.

■ The most important factor in answering this question is "the factual predicate of the several claims asserted. For it is the facts surrounding the transaction or occurrence which operate to constitute the cause of action, not the legal theory upon which a litigant relies." *Expert Electric, Inc., et al. v. Levine* (2d Cir.) 554 F.2d 1227, 1234, *cert. denied* (1977) 434 U.S. 903, 98 S.Ct. 300, 54 L.Ed.2d 190; *Rullo v. Rodriguez* (S.D.N.Y.1985) 604 F.Supp. 366, 369.

Clearly, there is but one set of operative facts underlying both Dalow's pleadings before the arbitrators and its complaints before us. Furthermore, analysis of those pleadings reveals that Dalow framed its complaints in both forums in the same terms. The first charge against Jordache in the second amended complaint is that it consented to the misrepresentation and false description by Rolo and Glenn-Mitchell of the nature and quality of their jewelry as "basic gold" or "fashion gold" (Count 1). In paragraph 10 of its arbitration counterclaims, Dalow asserted, "[Jordache] consented to the misrepresentation by Rolo and Glenn Mitchell that [the items sold by the latter] were 'basic gold' or 'fashion gold'." Count 4 of Dalow's complaint seeks a declaratory judgment that the Jordache marks are void because Jordache 1) issued overlapping licenses and 2) failed to exercise quality control over its licensees

---

3. Encouraged by what we now recognize to have been a mistaken request to be apprised of what actually happened before the arbitrators, Dalow seeks to argue that the record indicates that the arbitrators did not in fact decide the issues it seeks here to litigate. Defendant takes the opposite position. We decline to resolve this dispute because, having been educated by the *Pallante* decision, *supra,* we conclude that such resolution is irrelevant.

We do note, however, one helpful aspect of having had the record of arbitration before us. Examination of the proceedings has confirmed our belief that the factual predicate for Dalow's suit was in one way or another before the arbitrators. Plaintiff's complaint that relevant evidence was not before the arbitrators is not persuasive. Dalow's own pleadings in the arbitration clearly called for the production of any such evidence. To the extent that it failed to do so, it cannot be heard to complain.

*(e.g.,* Rolo). The first of these contentions was pled in Dalow's counterclaim 8 to the arbitrators ("[Jordache] has breached the Agreement ... by entering into an Agreement with Rolo ... which ... granted to Rolo the exclusive right to use the Jordache trademarks on or in connection with ... articles subject of the agreement by and between [Jordache] and [Dalow]." As to the second counterclaim, Dalow defended Jordache's claim for royalties by arguing that Jordache had lost its right to such payments by virtue of its having licensed shoddy, inferior merchandise. Dalow's post-hearing memorandum at 5; Closing Statement by Dalow at 4; Dalow's post-hearing memorandum at 3–6; *see also* Transcript of Arbitration at 611. Finally, Count 5 of the complaint charges Jordache with unfair competition. Such claim is based upon the entire course of conduct attributed to Jordache, Rolo and Glenn-Mitchell, and is thus implicit in the counterclaims made to the arbitration.

 Had Dalow failed to submit counterclaims in the arbitration, our present task might be more difficult. However, it clearly asserted its "claims against Jordache for the damages sustained as a result of Jordache's wrongdoing ... as counterclaims to [the] arbitration." Dalow's Hearing Memorandum at 1. Those pleadings and the evidence adduced in their support expressly required the arbitrators to adjudicate the issues, and the arbitrators' award specifically stated that they did so. As Judge Sofaer noted in *Pallante, supra,* at 91,615, if Dalow had a quarrel with the completeness of the award, it should have attacked it directly through a motion to vacate, modify or correct it. It may not here subject the award to collateral attack.

Also of relevance to determining whether or not to apply the preclusion doctrines are whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action, whether substantially the same evidence is involved in the two actions, and whether the two suits involve infringement of the same right. *Collard v.*

*Village of Flower Hill* (E.D.N.Y.1984) 604 F.Supp. 1318, 1324, *aff'd* (2d Cir.1985) 759 F.2d 205. Consideration of these factors strengthens our conclusion that Dalow is precluded from maintaining this suit.

Accordingly, we grant Jordache's motion and hold that the second amended complaint is barred by the *res judicata* effect of the arbitration proceedings. The complaint as against Jordache is dismissed.

SO ORDERED.