**In re Jay W. ROSENDAHL, Debtor.**

**Vans Inc., Plaintiff,**

v.

**Jay W. Rosendahl, Defendant.**

**Bankruptcy No. 303–30791–RLD7.**
**Adversary No. 03–3234–RLD.**

United States Bankruptcy Court,
D. Oregon.

Feb. 18, 2004.

Gregory A. Nylen, Santa Monica, CA, Stephen P. McCarthy, for Plaintiff.

Richard J. Parker, for Defendant.

## MEMORANDUM OPINION

RANDALL L. DUNN, Bankruptcy Judge.

This adversary proceeding was heard (the "Hearing") on December 17, 2003, on the parties' cross-motions for summary judgment. This is a core proceeding over which this court has jurisdiction pursuant to 28 U.S.C. §§ 157(b)(2)(I) and 1334 and United States District Court of Oregon Local Rule 2100–1. Plaintiff Vans, Inc. ("Vans") has moved for summary judgment to except its claim from debtor Jay W. Rosendahl's ("Rosendahl") discharge under 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4) and 523(a)(6).[1] Rosendahl denies that Vans is entitled to summary judgment and has moved for summary judgment or partial summary judgment in his favor, based on various defenses.

Following the Hearing, I have reviewed the pleadings and the parties' evidentiary submissions, as well as applicable legal authorities. The ultimate issues to be determined are whether the findings in arbitration between the parties are entitled to issue preclusion effect and whether issue preclusion applies to support summary judgment in favor of Vans on some or all of the causes of action stated by Vans in its adversary proceeding Complaint (the "Complaint").

### Factual Background

1. *Procedural History.*

On or about May 20, 2002, Vans filed a lawsuit (the "Civil Lawsuit") against Rosendahl and Scott Brabson ("Brabson"), a former Vice President of Vans, alleging, among other things, claims for fraud, conversion, breach of fiduciary duty and constructive trust, in the California state Superior Court for Los Angeles County (the "Superior Court"). Pursuant to the arbitration provisions of the consulting agreement ( the "Consulting Agreement") between them, Vans and Rosendahl moved to compel arbitration of the disputes raised in the Civil Lawsuit, and the Superior Court sent the matter to arbitration (the "Arbitration").

The Arbitration was conducted by Justice William A. Masterson (Ret.) (the "Arbitrator"), a retired justice of the California Court of Appeals. The Arbitration took place over eight days, starting December 2 and ending December 9, 2002. After considering the sworn testimony of eleven witnesses, thousands of pages of admitted documentary exhibits and post-hearing briefs, the Arbitrator issued an Interim Award in favor of Vans and jointly and severally against Rosendahl and Brabson on or about January 13, 2003.

Rosendahl sought protection under chapter 7 of the Bankruptcy Code in the District of Oregon on January 27, 2003. On April 1, 2003, this court granted Vans' motion for relief from stay to allow the Arbitrator "to complete a final arbitration award against" Rosendahl in the Arbitra-

---

1. Hereafter, unless otherwise noted, all statute references are to the federal Bankruptcy Code, 11 U.S.C. §§ 101 et seq.

tion. The Arbitrator issued his Final Award as Against Respondent Rosendahl (the "Final Award") on April 14, 2003. This adversary proceeding was filed on April 24, 2003.

### 2. *Findings of Fact and Conclusions of Law of the Arbitrator.*

Following is a summary of the factual findings and legal conclusions of the Arbitrator, as set forth in the Final Award:

Vans is a designer, distributor and retailer of certain apparel items, including footwear and snowboard boots. Vans does not make the products it sells. They are manufactured offshore.

For a number of years, Vans' products were manufactured in the Republic of Korea. During the mid–1990's, Vans began considering opportunities to have its products manufactured in China, in order to take advantage of potentially lower costs. To obtain assistance in this effort, in October 1997, Vans hired Brabson, who was experienced both in the shoe business and with overseas manufacturing. Brabson's title was "Vice President–Sourcing," and he entered into a written employment contract with Vans that incorporated by reference Vans' "Code of Ethics" for all employees (the "Code of Ethics"). Final Award, p. 7.

Brabson and Rosendahl were "good friends," who had known one another since 1980, when they started out together in the shoe business at Nike. Rosendahl had extensive experience with respect to shoe design and overseas manufacturing, and Brabson recommended Rosendahl to Vans. On or about August 17, 1999, Rosendahl entered into the Consulting Agreement with Vans, which continued until October 2000. Rosendahl's Consulting Agreement did not incorporate the Code of Ethics. Under the Consulting Agreement, Rosen-dahl received compensation in the "high five figures." Final Award, pp. 7–8.

Initially, when the move of Vans' manufacturing "sourcing" from the Republic of Korea to China was being considered and implemented, Vans did not have substantial personnel in Asia. The factories with which Vans dealt used an Asian company, CISA or Xi Sha ("CISA"), to assist them with product development for Vans. CISA was owned by a Taiwanese national, whose anglicized name is Kenny Bair ("Bair"). CISA received a 5% commission from the factories doing business with Vans, computed based upon the value of Vans products shipped by the factories. Vans did not participate in paying such commissions to CISA. Final Award, p. 8.

Apparently, Brabson had a business relationship with Bair prior to Brabson's employment by Vans. In May 1997, Bair and Brabson formed a Macao company, Asia League International Limited ("ALI Limited"). Ostensibly, ALI Limited offered consulting services for businesses interested in sourcing their manufacturing in Asia, but Bair testified at the Arbitration that ALI Limited "mostly only collected commissions." Bair further testified that it was agreed between him and Brabson that Rosendahl would be an owner of ALI Limited and share its commission income. Final Award, pp. 8–9.

In addition, Bair testified that the share of ALI Limited's income allocated to Brabson and Rosendahl was deposited to an account designated "Streamflow Holdings" (the "Streamflow Account") at the Bank of East Asia Ltd. in Hong Kong. The Streamflow Account had been opened in May 1995 by Brabson, with his father-in-law, Dragos Kokic, having sole signature authority. Between September 25, 1998, and July 16, 1999, Bair sent a total of $366,817.15 to the Streamflow Account. Final Award, p. 9.

Brabson completed the transfer of manufacturing contracts from the Republic of Korea to China in late 1998–early 1999, at which point he notified Bair and CISA that their services no longer were needed with respect to Vans. It is at this point that Vans claimed Brabson and Rosendahl set up a direct kickback arrangement with the Chinese factories that were doing manufacturing work for Vans. Vans contended that the owner representatives of the factories were told that they should pay 3% of the value of the products they manufactured for Vans into the Streamflow Account. The evidence presented at the Arbitration was that two factories manufacturing products for Vans (Johnson Footwear and Shyang Way) were given these instructions by Rosendahl, and one factory (Lucky Handsome) was so instructed by Brabson. Johnson Footwear, Shyang Way and Lucky Handsome deposited a total of $2,062,053.26 into the Streamflow Account between October 2, 1999, and February 8, 2001. Final Award, pp. 9–11.

From 1999 through early 2001, additional Chinese factories manufacturing products for Vans made the following deposits to the Streamflow Account:

| | |
|---|---|
| SkyStar/Talent Jumbo | $ 492,977.20 |
| Soon Victory/Well Frank | 474,099.89 |
| S.S. Ventures | 264,795.96 |
| Yu Yueh Chiang/Shing Tak/Quan Tak | 1,042,115.60 |
| Pegasus/Wuco Corp. | 103,600.00 |
| TOTAL | $2,377,588.65 |

The Arbitrator found the total of such payments to the Streamflow Account, including the $366,817.15 paid by Bair into the account, to be $4,806,459.06. Final Award, pp. 11–12.

Brabson resigned from his employment with Vans in late 2000 in a departure that Vans' witnesses characterized as abrupt. The Arbitrator found from the evidence that Brabson's leaving was related to changes in corporate reporting and the management structure at Vans. Vans' Consulting Agreement with Rosendahl was not renewed at the end of its term in October 2000. Final Award, pp. 12–13.

The first Vans heard about any purported kickback arrangements was in a discussion with Bair, the former business associate of Brabson who had been cut out of the commission deal with Brabson and Rosendahl. Final Award, p. 14. As Vans investigated the situation, details about the 3% "commission" arrangement came to light through discovery from the various Chinese factories manufacturing products for Vans. Vans' case at the Arbitration was presented through witness testimony and authenticated documentary evidence, "vigorously resisted by counsel for respondents." Final Award, p. 15.

Brabson did not testify at the Arbitration. Rosendahl did testify as an adverse witness called by Vans. Rosendahl denied any wrongdoing, did not acknowledge any close working relationship with Brabson and "constructed a tissue of prevarication that could not withstand even cursory review." Final Award, p. 15. Obviously, the Arbitrator did not find Rosendahl to be a credible witness.

By way of examples: Rosendahl testified that he did not solicit commissions from any of the factories manufacturing products for Vans. He asserted that the payments into the Streamflow Account deposited by Johnson Footwear and Shyang Way were legitimate compensation for consulting services with respect to products for Vans and other companies. Yet when questioned about the "base" for such compensation, Rosendahl admitted that the amounts were computed on the value of products manufactured for Vans only. Final Award, pp. 15–16.

Rosendahl further testified that he used the Streamflow Account "as a conven-

ience," suggested by Brabson, because his clients preferred to pay him through an Asian bank, and Rosendahl had not been able to open an account in Hong Kong. Evidence was presented that Rosendahl later opened an account at the same bank where the Streamflow Account was held for Dynamic Capital Holdings, a British Virgin Islands corporation that he controlled. He could not explain why he could not have done this earlier to resolve his claimed difficulties in opening a Hong Kong bank account. The Arbitrator found Rosendahl's responses "bordered on the ludicrous," when Rosendahl was asked about the safety of funds deposited in the Streamflow Account, co-mingled with the funds of others, where he had no signature authority. Final Award, p. 16.

In addition, Rosendahl identified Dragos Kokic as the sole signatory on the Streamflow Account, but he testified that he did not know Mr. Kokic and had never met him. Rosendahl was impeached with a letter written to him by Mr. Kokic, referencing a payment to Rosendahl in the amount of $58,485 for "contract work that you have already completed as previously agreed." Mr. Kokic closed the letter by saying, "I look forward to continuing work with you in the future for the next phase of my global projects." Final Award, p. 16.

In light of his perception of Rosendahl as truth challenged, the Arbitrator noted that he was very careful in evaluating the credibility of other witnesses, including Bair and the representatives of the Chinese factories, who clearly were interested in preserving their economic relationships with Vans. He accepted the testimony of all such witnesses and found that they were supported in large measure by contemporaneous documentation and/or evidence from other sources. Final Award, pp. 17–18.

The Arbitrator ultimately found that Vans prevailed by a preponderance of the evidence on its causes of action for breach of fiduciary duty, breach of contract, conversion/constructive trust, fraud and statutory unfair competition. The Arbitrator further found that Vans was entitled to an award of damages on each *and* all of the causes of action on which he found in Vans' favor in the aggregate amount of all of the unlawful kickbacks received by Rosendahl and Brabson through deposits into the Streamflow Account, a total of $4,806,459.06. He held that Vans was entitled to a joint and several judgment against Rosendahl and Brabson in that amount. The Arbitrator did not award punitive damages. The Arbitrator did award Vans interest as the prevailing party "for the recovery of a sum certain or reasonably capable of ascertainment with certainty." Final Award, p. 26. The Arbitrator calculated interest from the respective dates when subject amounts were deposited into the Streamflow Account through February 20, 2003, arriving at an interest award of $1,369,244.78, for which Rosendahl and Brabson once again were jointly and severally liable. The Arbitrator further awarded Vans attorneys fees and costs against Rosendahl only in the amount of $1,857,515.21 under the attorneys fees provision of the Consulting Agreement.

*Legal Discussion*

A. *Summary Judgment Standards*

Granting a motion for summary judgment is appropriate only if there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Fed. R. Bankr.P. 7056; *State Farm Mutual Auto. Ins. Co. v. Davis,* 7 F.3d 180, 182 (9th Cir.1993). "Material facts" are such facts as may affect the outcome of a case under governing law. *Anderson v.*

*Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute concerning a material fact is "genuine" only if there is sufficient evidence to justify a finding in favor of the non-moving party. *Id.* However, all justifiable inferences from the evidence presented are to be considered in favor of the non-moving party. *Id.* at 255, 106 S.Ct. 2505.

B. *Full Faith and Credit*

■ Vans argues that the Final Award should be treated as final and given full faith and credit for issue preclusion purposes in this adversary proceeding. Under the federal Full Faith and Credit Act, 28 U.S.C. § 1738, the acts of state tribunals are given the same "full faith and credit" as they have by law in the states of their origin. Accordingly, federal courts generally are bound to recognize the preclusion effects of state court judgments. *See Migra v. Warren City School District Bd. of Educ. et al.,* 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984). The foregoing result applies to the decisions of arbitrators as well. *See, e.g., Clark v. Bear Stearns & Co., Inc.,* 966 F.2d 1318, 1321 (9th Cir.1992); *Seborowski v. Pittsburgh Press Co.,* 188 F.3d 163, 169–71 (3d Cir.1999); and *Dalow Industries, Inc. v. Jordache Enterprises, Inc.,* 631 F.Supp. 774, 778 (S.D.N.Y.1985)("We of course treat the arbitration award as if it were a judicial decision for purposes of applying the preclusion doctrines.").

■ Issue preclusion principles apply in bankruptcy proceedings seeking exceptions to discharge under § 523(a). *Grogan v. Garner,* 498 U.S. 279, 284–85 n. 11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). However, the preclusion effects of decisions of state tribunals in bankruptcy court are determined by the preclusion law of the concerned state. *See In re Baldwin,* 249 F.3d 912, 917 (9th Cir.2001). Since the Arbitration was conducted in California,

under California law, I look to the law of California to determine whether the Final Award should be given issue preclusion effect in this adversary proceeding.

C. *Adjudicatory Nature of the Arbitration*

■ At the outset, it is only appropriate to recognize arbitration decisions as having preclusive effects if the arbitration was sufficiently "adjudicatory" in its procedural safeguards.

> Parties to an arbitration...are often afforded the opportunity for a hearing before an impartial and qualified officer, at which they may give formal recorded testimony under oath, cross-examine and compel the testimony of witnesses, and obtain a written statement of decision. When an arbitration has these attributes, it is not unjust to bind the parties to determinations made during the proceeding. *Kelly v. Vons Companies, Inc.,* 67 Cal.App.4th 1329, 1336–37, 79 Cal.Rptr.2d 763 (1998).

*See also Jacobs v. CBS Broadcasting Inc.,* 291 F.3d 1173, 1178–79 (9th Cir.2002).

■ The Arbitration was an adversarial proceeding in which all parties, including Rosendahl, were represented by counsel. The Arbitrator was an independent hearing officer, having served formerly on the California Court of Appeals. All witnesses at the Arbitration hearing testified under oath and were subject to cross-examination. Rosendahl was represented by counsel of his choice and testified at the Arbitration hearing. All parties to the Arbitration had the opportunity to subpoena witnesses and submit documentary evidence in the form of exhibits. A verbatim transcript of the Arbitration proceedings was kept, and the Arbitrator issued his detailed Final Award in writing. I find that the Arbitration was sufficiently adjudicatory to be given preclusive effect.

D. *California Standards for Applying Issue Preclusion*

 Under California law, "[c]ollateral estoppel [issue preclusion] precludes relitigation of issues argued and decided in prior proceedings." *Lucido v. Superior Court*, 51 Cal.3d 335, 341, 272 Cal.Rptr. 767, 795 P.2d 1223, 1225 (1990). However, California courts only apply issue preclusion if the party claiming its benefit satisfies by a preponderance of the evidence each of the following five threshold requirements, and then establishes that the application of issue preclusion furthers its underlying public policies. *In re Baldwin*, 249 F.3d at 917–18, citing *Lucido v. Superior Court*, 51 Cal.3d at 341–42, 272 Cal. Rptr. 767, 795 P.2d at 1225–26.

> First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding. *Id.* at 341, 272 Cal.Rptr. 767, 795 P.2d at 1225.

Considering these requirements in reverse order, Rosendahl was an active participant in the Arbitration, and Vans is seeking exception of its claim determined against Rosendahl in the Arbitration in this adversary proceeding. The fifth requirement is not in issue between the parties.

 Likewise, there appears to be no dispute between the parties that the Final Award was a final decision in the Arbitration on the merits. Consistent with this court's order granting limited relief from stay, the Final Award has not been confirmed by a judgment in the Superior Court. However, an unconfirmed arbitration award can be regarded as a final determination for issue preclusion purposes on subject matters of fact and law in appropriate circumstances.

> Although it is true that an arbitration award is not a judgment having the same force and effect as a judgment in a civil action until it is confirmed, . . . it is, nevertheless, the final and binding decision or judgment of the arbitrator in the exercise of his quasi-judicial function to determine the disputed matters referred to him by the parties to the submission. . . . It is a recognized principle that an arbitration award is conclusive on matters of fact and law. . . . [W]e conclude that the essential adjudication in an arbitration proceeding is the award. The function of the court is limited to confirming the award as made, or to correct and confirm it as corrected, or to vacate it within the limitations and as provided by the [California] statutes. *Trollope v. Jeffries*, 55 Cal.App.3d 816, 128 Cal.Rptr. 115, 119–20 (1976).

*See also In re Robinson*, 265 B.R. 722, 731 (6th Cir. BAP 2001); *In re Marx*, 171 B.R. 218, 221–23 (Bankr.N.D.Tex.1994); and *Thibodeau v. Crum*, 4 Cal.App.4th 749, 758–61, 6 Cal.Rptr.2d 27 (1992). In Rosendahl's main bankruptcy case, this court granted Vans' motion for relief from stay specifically to allow the Arbitrator "to complete a final arbitration award against" Rosendahl. I find that the Final Award is a final award on the merits for purposes of my analysis of issue preclusion effects in this adversary proceeding.

The first three threshold requirements for determining the appropriateness of applying issue preclusion will be examined in relation to the specific causes of action asserted by Vans in its Complaint. However, there are some general objections to

the application of issue preclusion asserted by Rosendahl in his opposition to Vans' motion for summary judgment and in support of Rosendahl's own motion for partial or total summary judgment that need to be addressed.

### E. *Rosendahl's General Objections to the Arbitration and the Final Award*

#### 1. *Allegation that the Arbitrator Exceeded his Authority.*

██ First, Rosendahl argues that the Arbitrator exceeded his authority because the Consulting Agreement provides for arbitration of "[d]isputes arising from the interpretation, breach, or enforcement of this Agreement," and does not include authority to consider and resolve tort allegations between the parties. In the Final Award, the Arbitrator states that this argument was raised by Rosendahl for the first time in his Post–Hearing brief. Final Award, p. 6. The Arbitrator had two responses:

> First, to the extent the arbitration clause was ambiguous or uncertain, the parties have construed it as being sufficient to embrace all claims asserted by Vans, thus the parties have bound themselves to that interpretation. *Southern Cal. Edison Co. v. Superior Court,* 37 Cal.App.4th 839, 851, 44 Cal.Rptr.2d 227. Second, Rosendahl himself moved for arbitration in this matter, without any claim or contention that portions of the dispute were not subject to arbitration. Both practical and judicial estoppel bar this apparent attempt to manipulate the system. *Thomas v. Gordon,* 85 Cal. App.4th 113, 119, 102 Cal.Rptr.2d 28; 7 Witkin, *California Procedure,* Chap. 9, Sec. 284A. *Id.*

Rosendahl concedes in his Answer to the Complaint that he moved to compel the Arbitration in the Civil Lawsuit. *See* Complaint, ¶ 17, and Answer of Defendant to Adversary Complaint and Affirmative Defenses, p. 1. In these circumstances, I find that the Arbitrator gave appropriately short shrift to Rosendahl's gamesmanship in arguing after an eight-day hearing in the Arbitration for the first time that the Arbitrator was considering issues beyond the scope of his authority under the Consulting Agreement. I find that the Arbitrator was authorized by the parties to consider and rule on the issues submitted to arbitration and decided in the Final Award.

#### 2. *Alleged Improper Evidence.*

██ Rosendahl argues that the Final Award is not entitled to full faith and credit and preclusive effect because the Arbitrator relied on illegally obtained evidence and considered evidence that might not be admissible under the Federal Rules of Evidence. In the Final Award, the Arbitrator noted that the JAMS rules, under which the Arbitration was conducted, do not require "strict conformity to the rules of evidence." JAMS Rule 22(d). However, he further stated that he had "attempted to conform to traditional rules of evidence, particularly as regards proffered hearsay, and...noted in [the Final] Award where such evidence was admitted for a limited purpose." Final Award, pp. 7, 14. The Arbitrator further operated on the assumption that Vans had the burden of proof on the issues before him, with the burden of proof standard being preponderance of the evidence, the same burden of proof standard applicable with respect to each of the causes of action stated by Vans in its Complaint. *See Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

██ California law grants substantial deference to the decisions of an arbitrator. Generally, the sufficiency of the evidence in an arbitration award will not

be subject to judicial review, because the parties freely entered into an agreement to be bound by the terms of the arbitrator's decision.

> Arbitration is a voluntary procedure for settling disputes, leading to a final determination of the rights of the parties. The policy of the law is to favor arbitration, and every reasonable intendment is indulged to give effect to such proceedings. (6 Cal.Jur.3d, Arbitration and Award, § 1, pp. 6–8.) Once a valid award is made by the arbitrator, it is conclusive on matters of fact and law and all matters in the award are thereafter res judicata. A limited form of judicial review of arbitration awards is provided by statute. (Code Civ. Proc., §§ 1285–1288.) However, *every presumption favors the arbitrator's award, and the merits of the award, either on question of law or fact, are generally not subject to review. Lehto v. Underground Construction Co.,* 69 Cal.App.3d 933, 939, 138 Cal.Rptr. 419 (1977). [Emphasis added.]

*See also Moncharsh v. Heily & Blase,* 3 Cal.4th 1, 10 Cal.Rptr.2d 183, 188, 832 P.2d 899 (1992) (A court may not review the validity of the arbitrator's reasoning or the sufficiency of the evidence to support the arbitrator's award in an agreed arbitration.); *Kelly v. Vons Companies, Inc.,* 67 Cal.App.4th at 1336, 79 Cal.Rptr.2d 763.

California Code of Civil Procedure § 1286.2 states the bases upon which an arbitration award is subject to being vacated:

(1) The award was procured by corruption, fraud or other undue means.

(2) There was corruption in any of the arbitrators.

(3) The rights of [a] party were substantially prejudiced by misconduct of the arbitrator.

(4) The arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted.

(5) The rights of [a] party were substantially prejudiced by the refusal of the arbitrators to postpone the hearing upon sufficient cause being shown therefor or by the refusal of the arbitrators to hear evidence material to the controversy or by other conduct of the arbitrators contrary to the provisions of this title....

Rosendahl does not allege that the Arbitrator was corrupt, nor does Rosendahl allege any misconduct of the Arbitrator, other than Rosendahl's general allegations of wrong evidentiary rulings. Rosendahl further does not allege that the Arbitrator refused to hear evidence material to the issues submitted to the Arbitration. I have considered and rejected Rosendahl's argument that the Arbitrator exceeded his authority, as discussed in Section E.1. above.

Rosendahl does argue generally that the Arbitrator "refused to delay the [A]rbitration hearing." What Rosendahl neglects to mention is that the motions before the Arbitrator to continue the Arbitration hearing were Brabson's, not Rosendahl's. *See* Final Award, p. 3. The Arbitrator considered the three factors set forth in *Fuller v. Superior Court,* 87 Cal.App.4th 299, 304–05, 104 Cal.Rptr.2d 525 (2001),[2] in deciding to proceed with the Arbitration hearing. *See* Final Award, pp. 3–4. Ro-

---

**2.** The three "competing interests" considered by the *Fuller* court in affirming the trial court's refusal to stay discovery proceedings in the face of defendants' assertion of their 5th amendment privileges were 1) the interest of the party invoking the privilege against self-incrimination, 2) the interest of the civil litigant in pursuing its claim, and 3) the interest of the justice system, courts and arbitrators in efficiently administering civil cases.

sendahl does not provide any substantial argument as to why the Arbitrator's failure to postpone the Arbitration hearing should invalidate the Arbitrator's findings in the Final Award. *See* Section E.4. *infra.*

Rosendahl further argues that the Final Award should be denied full faith and credit and any preclusive effect because it was obtained by Vans' "bullying, misrepresentations, concealment, over-reaching and flat out untruths." Rosendahl's Reply Memorandum of Law by Defendant in Support of Partial or Total Summary Judgment ("Rosendahl's Reply Memorandum"), p. 8. Rosendahl makes this argument with great vehemence but little substance.

The instances of alleged misconduct asserted against Vans in obtaining the Final Award in the Arbitration are as follows: Rosendahl argues that Vans improperly applied for and used an ex parte Temporary Restraining Order ("TRO") in the Civil Lawsuit. However, Rosendahl does not explain how Vans' actions in obtaining or using the TRO in the Civil Lawsuit had any impact whatsoever in the Arbitration.

Rosendahl also alleges that Vans obtained evidence through "extra legal" means, "such as taking of trash and using unnamed inside contacts to disclose confidential information." Rosendahl's Reply Memorandum, p. 8. Rosendahl does not assert that any such evidence was irrelevant to the issues submitted to the Arbitrator for decision, and my review of the exhibits cited by Rosendahl (*see* Rosendahl Exs. 23, 24, 25, 26 and 27) does not reveal any evidence that any particular exhibits submitted by Vans were inadmissible in the Arbitration. I find that Rosendahl's allegations that Vans obtained evidence used in the Arbitration through extra legal means does not raise a genuine issue of material fact in this proceeding.

Rosendahl states that the improprieties he alleges against Vans "were addressed by another California judge in a suit brought by Gordana Brabson." Rosendahl's Memorandum of Law in Response to Plaintiff's Motion for Summary Judgment ("Rosendahl's Opposition Memorandum"), pp. 9–10. However, nothing raised by Rosendahl in this proceeding concerning Vans' acquisition of evidence compels this court not to give full faith and credit to the Final Award.

Rosendahl further points to alleged errors and misrepresentations in the affidavits filed by Vans in support of its motion for summary judgment with respect to "the status of the Gordana Brabson case and the presence of Mr. Sanger at the proceedings." Rosendahl's Reply Memorandum, pp. 8–9. Whether the subject affidavit information is correct or not is irrelevant to my decision in this proceeding and does not raise any genuine issues of material fact because I am relying for my findings on the findings of fact made by the Arbitrator in the Final Award. The affidavits filed with this court could have had no impact on the Arbitrator's decision.

Rosendahl also argues that Vans mischaracterized evidence in the Arbitration. The Arbitrator ultimately found otherwise, and I find, consistent with California law, as cited above, and the standards considered with respect to vacating arbitration awards set forth in California Code of Civil Procedure § 1286.2, that it is not appropriate for this court to second guess the Arbitrator's evaluation of relevant admitted evidence.

Finally, Rosendahl contends that the Arbitrator erred in allowing the introduction by Vans at the Arbitration hearing of exhibits that had not been produced to the defense prior to the discovery cutoff deadline. Rosendahl's Opposition Memoran-

dum, p. 4. I find, again consistent with California law and California Code of Civil Procedure § 1286.2, that it is not appropriate for this court to review the decisions of the Arbitrator in admitting such evidence. However, even were this court authorized to review such decisions of the Arbitrator, Rosendahl has not provided an adequate record to allow this court to conduct such a review.

Rosendahl generally complains that the Arbitrator admitted evidence not provided to the defense prior to the discovery cutoff and then invites this court to review the complete CD "transcript" of the Arbitration to support his argument. *See* Rosendahl's Opposition Memorandum, p. 4; Affidavit of Jay Rosendahl in Support of his Motion for Summary Judgment and in Opposition to Vans' Motion for Summary Judgment, p. 17; and Affidavit of Jay Rosendahl Index to Exhibits, p. 3. It is unreasonable for Rosendahl to expect this court to comb the entire record of the Arbitration to locate unspecified instances of the Arbitrator admitting evidence that allegedly was not provided to Rosendahl prior to the discovery cutoff in the Arbitration, and I decline to do so.

Based on the foregoing discussion and analysis of the record, I find Rosendahl's argument that the Final Award should be denied full faith and credit and preclusive effect because the Arbitrator may have relied on inadmissible or illegally obtained evidence to be without merit.

### 3. *Alleged Failures to Allocate Liability or Damages.*

█ Rosendahl argues that the Final Award is inherently flawed because the Arbitrator did not allocate the damages that he awarded separately either among the claims litigated or between Rosendahl and Brabson. However, the Arbitrator found specifically that the measure of Vans' damages for breach of fiduciary duty was the aggregate amount of unlawful kickbacks received by Brabson and Rosendahl through deposits to the Streamflow Account, and the "same measure of damages (the amount of the kickbacks) is the damage suffered by Vans on all its claims for relief." Final Award, p. 21. Since the Arbitrator found that the very same measure of damages applied to each of the causes of action on which he ruled in favor of Vans in the Arbitration, there is no error in not allocating separate damage amounts among the claims on which Vans prevailed.

The Arbitrator further found that Brabson and Rosendahl acted and benefited as co-conspirators in implementing an illicit kickback scheme. Accordingly, he held that Rosendahl and Brabson were jointly and severally liable for the total of damages awarded to Vans. Final Award, pp. 18, 24. The Arbitrator neither intended nor should be held as having erred in not making a separate allocation of damages between Rosendahl and Brabson.

### 4. *Alleged Denial of Due Process.*

█ Finally, in Rosendahl's Affidavit filed in support of Rosendahl's motion for partial or total summary judgment, Rosendahl claims that the arbitration was unfair and denied him due process in that 1) Brabson did not testify because of "5th amendment claims," and 2) Brabson's "main attorney" did not participate fully at the Arbitration, leaving Brabson's defense in the hands at times of a "junior attorney," "who was not fully familiar with the facts that could have defeated the Van's [sic] case." *See* Motion and Affidavit for Partial or Total Summary Judgment, p. 2.

The short answer to Rosendahl's argument is that Brabson is not before me. It is Rosendahl who is defending against Vans' efforts to except its claim from Ro-

sendahl's discharge in bankruptcy. Rosendahl was represented throughout the Arbitration by counsel of his choice, who presumably was fully familiar with the facts that could have defeated Vans' case, and Rosendahl testified in his own behalf at the Arbitration. Rosendahl was given every opportunity at the Arbitration to present evidence to counter Vans' claims. The Arbitrator did not find Rosendahl's testimony credible. In short, Rosendahl's argument that the Arbitration was unfair as to him and denied him due process is nonsense.

This court having found that the Arbitration was a sufficiently "adjudicatory" proceeding to support issue preclusion and that the Final Award is entitled to full faith and credit as a final determination, it remains to analyze whether it is appropriate to apply issue preclusion with respect to the particular causes of action asserted by Vans in the Complaint. My analysis begins with a general discussion of standards applicable in exception to discharge cases.

### F. *Generally Applicable Legal Standards in Discharge Exception Cases*

■ A primary objective of the Bankruptcy Code is to provide a fresh start for debtors overburdened by debts they cannot pay. Accordingly, I start from the proposition that the discharge exception provisions of the Bankruptcy Code are interpreted narrowly in favor of debtors. *See, e.g., In re Bernard,* 96 F.3d 1279, 1281 (9th Cir.1996).

■ The party seeking to except its claim from the debtor's discharge bears the burden of proof to establish that its claim is nondischargeable. Since the United States Supreme Court's decision in *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991), the burden of proof standard for actions to except a creditor's claim from the debtor's discharge is preponderance of the evidence. In other words, in spite of the Bankruptcy Code's policy bias in favor of the debtor's discharge, a party seeking to except an obligation from discharge under § 523(a) will prevail if the evidence establishes that it is more likely than not that the creditor's cause of action is justified.

■ In addition, since a number of exceptions to discharge under the Bankruptcy Code are predicated upon the debtor's intent to commit harmful, dishonest or fraudulent conduct, and the debtor is unlikely to admit to such intent, the debtor's subjective intent may be established through circumstantial evidence or evidence of a pattern of conduct consistent with the misconduct alleged. *See, e.g., In re Adeeb,* 787 F.2d 1339, 1343 (9th Cir. 1986); *In re Devers,* 759 F.2d 751, 754 (9th Cir.1985).

■ Debtors generally cannot discharge their liabilities based upon their fraudulent or dishonest conduct in bankruptcy, reflecting "a basic policy animating the [Bankruptcy] Code of affording relief only to an 'honest but unfortunate debtor.'" *Cohen v. de la Cruz,* 523 U.S. 213, 217, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998). The issues presented in this adversary proceeding are whether the conduct of Rosendahl that resulted in Vans' claim against him fit within the exceptions to discharge provided for in §§ 523(a)(6), 523(a)(4) or 523(a)(2)(A).

### G. *Section 523(a)(6)*

Section 523(a)(6) excepts from discharge debts for willful and malicious injury to the person or property of another. The standards for willfulness and maliciousness in deciding § 523(a)(6) cases are distinct.

■ In order to find that damage was "willful," I must find that the debtor acted

with either a subjective intent to harm or a subjective belief that harm was substantially certain to result from the debtor's conduct. *See In re Su*, 290 F.3d 1140, 1144–46 (9th Cir.2002); and *In re Jercich*, 238 F.3d 1202 (9th Cir.2001).

■ "Malicious" damage involves "(1) a wrongful act, (2) 'done intentionally, (3) which necessarily causes injury, and (4)is done without just cause or excuse.'" *In re Bammer*, 131 F.3d 788, 791 (9th Cir.1997) (citing *In re Cecchini*, 780 F.2d 1440, 1443 (9th Cir.1986)). Also *see In re Su*, 290 F.3d at 1146–47. "*Any* dictionary one consults defines 'just' as 'honorable and fair in dealings and actions,' 'consistent with moral right,' and 'valid within the law.'" *In re Bammer*, 131 F.3d at 792. [Emphasis in original.]

In considering § 523(a)(6) causes of action, I also am mindful of the Supreme Court's characterization in *Kawaauhau v. Geiger*, 523 U.S. 57, 61–62, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998): "[T]he (a)(6) formulation triggers in the lawyer's mind the category 'intentional torts,' as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend 'the *consequences* of an act,' not simply 'the act itself.'" [Emphasis in original.]

■ The Arbitrator found that Rosendahl engaged with Brabson in overt acts in furtherance of a conspiracy to obtain illicit kickbacks from the Chinese factories that were doing manufacturing business for Vans. Final Award, pp. 18–19. The Arbitrator found that there was direct and circumstantial evidence of kickbacks deposited by the Chinese factories doing business with Vans into the Streamflow Account. Final Award, p. 18. The Arbitrator found that Rosendahl and Brabson wrongfully appropriated money, i.e., the illicit kickbacks, to which Vans was entitled. Final Award, p. 20. The Arbitrator

further found that there was clear and convincing evidence of serious intentional torts involving malice committed by Rosendahl and Brabson. Final Award, p. 25.

Based upon the findings of the Arbitrator in the Final Award, I find that Rosendahl conspired and worked with Brabson intentionally to obtain illicit kickbacks from the Chinese factories manufacturing products for Vans, knowing that Vans would be damaged, either through increased costs for its manufactured products or appropriation by Rosendahl and Brabson of funds to which Vans was entitled. Accordingly, I find that Rosendahl's acts resulting in damage to Vans were willful.

I further find Rosendahl's acts in fostering the illicit kickback scheme with Brabson were wrongful acts, done intentionally and without just cause or excuse, necessarily causing injury to Vans. Consistent with the Arbitrator's findings, I find that Rosendahl's acts were malicious.

Although the causes of action litigated in the Arbitration are different from the cause of action for exception to Rosendahl's discharge under § 523(a)(6) that is before me, I find that the elements of the § 523(a)(6) claim with respect to which Vans seeks to apply issue preclusion are identical to issues decided by the Arbitrator, as discussed above. I further find that those issues actually were litigated and were necessarily decided in the Arbitration.

Accordingly, assuming that the public policies behind the doctrine of issue preclusion are appropriately served, I find that Vans is entitled to summary judgment on its § 523(a)(6) cause of action, and Rosendahl's motion for summary judgment on the § 523(a)(6) cause of action stated in the Complaint must be denied.

### H. *Section 523(a)(4)*

 Vans' cause of action against Rosendahl under § 523(a)(4) is based on a claim of larceny. For § 523(a)(4) purposes, "[l]arceny is the fraudulent and wrongful taking and carrying away the property of another with intent to convert such property to the taker's use without the consent of the owner.... Larceny is distinguished from embezzlement in that the original taking of the property was unlawful." *In re Montes,* 177 B.R. 325, 331 (Bankr.C.D.Cal.1994). *See also In re Hofmann,* 144 B.R. 459, 464 (Bankr. D.N.D.1992); 4 Collier on Bankruptcy ¶ 523.10[2] at 523–76 (15th Ed. Revised 2003).

 In the Final Award, the Arbitrator found that Rosendahl and Brabson "wrongfully appropriated money to which Vans was entitled so a conversion was committed" through the illicit kickback scheme implemented by Rosendahl and Brabson. Final Award, p. 20. The Arbitrator found the conspiracy and kickbacks obtained by Rosendahl and Brabson to be unlawful. Final Award, pp. 18, 21. The issues underlying these findings by the Arbitrator were litigated and necessarily decided in the Arbitration. The findings of the Arbitrator directly support findings by this court that Rosendahl committed larceny in terms of an unlawful conversion against Vans, and Vans' claim against Rosendahl should be excepted from Rosendahl's discharge pursuant to § 523(a)(4).

Accordingly, once again assuming that the objectives of public policy are served, I find that Vans is entitled to summary judgment on its cause of action under § 523(a)(4), and Rosendahl's motion for summary judgment on Vans' § 523(a)(4) claim should be denied.

### I. *Section 523(a)(2)(A)*

 Vans has asserted a cause of action to except its claim against Rosendahl from discharge based upon fraud, pursuant to § 523(a)(2)(A). In the Ninth Circuit, to prove actual fraud in order to except a claim from discharge, a creditor must establish each of the following elements by a preponderance of the evidence:

(1) The debtor made the subject representations, or omitted to state material facts, equating to a misrepresentation(s).

(2) At the time the subject representations or omissions were made, the debtor knew the representations were false, or knew that the omissions created a materially false statement(s), and the debtor was under a duty to disclose the omitted statement(s).

(3) The debtor made the subject representations or omissions with the intention of deceiving the creditor.

(4) The creditor justifiably relied upon the debtor's representations or omissions to state material facts.

(5) The creditor suffered the alleged damages as the proximate result of the subject representations or omissions having been made.

*See, e.g., In re Harmon,* 250 F.3d 1240, 1246 n. 4 (9th Cir.2001); and *In re Eashai,* 87 F.3d 1082, 1086 (9th Cir.1996) (citing *In re Britton,* 950 F.2d 602, 604 (9th Cir. 1991)).

 In support of its § 523(a)(2)(A) cause of action, Vans relies on the findings of the Arbitrator that the evidence at the Arbitration established Rosendahl's liability for "intentional fraud," based on Rosendahl's implementation and concealment of the kickback scheme, when he had a duty to disclose to Vans matters material to his engagement. Final Award, pp. 20–21. Vans argues that the elements of a fraud determination under California state law

are the same as the fraud elements for federal law purposes under § 523(a)(2)(A). Accordingly, Vans argues that in deciding that Rosendahl committed fraud in the Arbitration, the Arbitrator necessarily made findings with respect to the required fraud elements under federal law, and Vans' claim should be excepted from Rosendahl's discharge based on the fraud exception in § 523(a)(2)(A).

My problem with Vans' argument is that, as opposed to the Arbitrator's findings as they relate to Vans' §§ 523(a)(4) and (a)(6) causes of action, there are not specific findings in the Final Award that I can relate to all of the required § 523(a)(2)(A) elements. In particular, there are no specific findings in the Final Award as to whether Vans relied on Rosendahl's omission(s) to disclose his illicit kickback scheme with Brabson.

In these circumstances, I find that it is not appropriate to grant summary judgment in Vans' favor on its § 523(a)(2)(A) cause of action. *See, e.g., In re Guccione*, 268 B.R. 10, 15–16 (Bankr.E.D.N.Y.2001); *Janess v. Messick*, 202 B.R. 196, 198 (Bankr.D.Del.1996). However, I likewise find that it is not appropriate to grant summary judgment in favor of Rosendahl on Vans' § 523(a)(2)(A) cause of action. In light of the Arbitrator's general findings in the Final Award that Rosendahl committed intentional fraud, I find that Vans should have an opportunity at trial to supplement the Arbitrator's findings to establish that Vans' claim against Rosendahl satisfies all of the elements for an exception from discharge under § 523(a)(2)(A).

J. *Damages*

■ As noted above, the Arbitrator found that Vans was entitled to an award of damages against Rosendahl in the amount of all unlawful kickbacks received by Rosendahl and Brabson, a total of $4,806,459.06, on each of the causes of action submitted to Arbitration. Final Award, pp. 21, 24. I find that it is not appropriate to disturb the Arbitrator's conclusions as to damages under California law. *See, e.g., Moncharsh v. Heily & Blase*, 10 Cal.Rptr.2d at 188, 832 P.2d 899. Accordingly, I find that Vans is entitled to concurrent determinations under §§ 523(a)(4) and (a)(6) that Vans' damages claim in the amount of $4,806,459.06 is excepted from Rosendahl's discharge.

■ For the same reason, I find that the Arbitrator's award of interest to Vans as the prevailing party for the recovery of a sum that was reasonably ascertainable with certainty, in the amount of $1,369,244.78, is excepted from Rosendahl's discharge under §§ 523(a)(4) and (a)(6), with a minor exception. Since Rosendahl filed his bankruptcy petition on January 27, 2003, and the Arbitrator calculated interest through February 20, 2003, the interest award should be adjusted to reflect accrual up to January 27, 2003.

The Arbitrator awarded attorneys' fees and costs to Vans against Rosendahl in the Final Award in the amount of $1,857,515.21, based upon the terms of the Consulting Agreement. Section 3 of the Consulting Agreement provides in relevant part that, "[t]he prevailing party [in arbitration] shall be entitled to reasonable attorneys' fees, costs, and necessary disbursements in addition to any other relief to which he or it may be entitled." Rosendahl Ex. 1, pp. 2–3.

I find no basis to overturn the Arbitrator's findings in awarding attorneys' fees and costs to Vans against Rosendahl in light of the provisions of the Consulting Agreement. Accordingly, I find that in addition to damages and interest, Vans is entitled to an exception to Rosendahl's discharge under §§ 523(a)(4) and (a)(6) for

the Arbitrator's attorneys' fees and costs award of $1,857,515.21.

Rosendahl raises a legitimate point with respect to Vans' claim in light of the joint and several nature of the Arbitrator's award against Rosendahl and Brabson. Rosendahl argues that he is entitled to a credit for any amounts from any sources that Vans recovers on the joint and several Final Award, and I agree. Accordingly, any judgment entered in this adversary proceeding in Vans' favor should provide that Rosendahl is entitled to a dollar for dollar offset and satisfaction of Vans' claim for any amounts that Vans collects on the Final Award from any source other than Rosendahl.

K. *The Public Policies Underlying Issue Preclusion*

■ The California Supreme Court has identified three policy objectives on which issue preclusion is based: "preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation." *Lucido v. Superior Court*, 51 Cal.3d at 343, 272 Cal.Rptr. 767, 795 P.2d 1223.

■ I find, consistent with the holding of the Ninth Circuit in *In re Baldwin*, 249 F.3d at 920, that each of those policy objectives would be satisfied by applying issue preclusion and granting summary judgment in Vans' favor on its causes of action under §§ 523(a)(4) and (a)(6).

First, the public's confidence in the judicial system could be undermined if this court were to insist on relitigating the issue of Rosendahl's wrongful conversion of funds to which Vans was entitled through an illicit kickback scheme. Retrying that issue in bankruptcy court runs counter to the principle of federalism articulated in the Full Faith and Credit Act.

Second, judicial economy certainly will be served by not starting over to litigate all issues that required eight days of hearing, plus substantial discovery and briefing, to try in the Arbitration.

Finally, applying issue preclusion with respect to Vans' causes of action under §§ 523(a)(4) and (a)(6) will at least help to minimize Vans' further exposure to litigation. In spite of Rosendahl's unsubstantiated claims to the contrary, I find that Rosendahl had a full and fair opportunity to mount his defense against Vans in the Arbitration, and his rights to due process were not violated. No purpose other than multiplying the parties' time and expenses in litigation would be served by retrying the issues concerned in Vans' causes of action under §§ 523(a)(4) and (a)(6).

My conclusion is that the public policies underlying issue preclusion would be advanced by applying issue preclusion to Vans' §§ 523(a)(4) and (a)(6) causes of action in this adversary proceeding.

*Conclusion*

Based on the foregoing findings of fact and conclusions of law, I find that Vans' motion for summary judgment on the causes of action stated under §§ 523(a)(4) and (a)(6) in the Complaint should be granted, and Vans' motion for summary judgment on its cause of action stated under § 523(a)(2)(A) should be denied. Accordingly, Vans is entitled under §§ 523(a)(4) and (a)(6) to a judgment that its claim for damages in the amount of $4,806,459.06, plus interest as calculated by the Arbitrator but adjusted to reflect accrual up to January 27, 2003, plus attorneys' fees and costs in the amount of $1,857,515.21, subject to offset for amounts collected by Vans from sources other than Rosendahl to satisfy the Final Award, is excepted from Rosendahl's discharge. I further find that Rosendahl's motion for

partial or total summary judgment should be denied. Counsel for Vans should submit an order and judgment consistent with the ultimate conclusions of this Memorandum Opinion, after submitting such order and judgment to counsel for Rosendahl for review and comments as to form.